DAVIS, et al. *v.* POLK FINANCIAL SERVICE, et al.

No. 42026 November 27, 1961 135 So. 2d 175

*Lawrence D. Arrington,* Hattiesburg, for appellant.

*M. M. Roberts, J. C. Bell,* Hattiesburg; Watkins and *Eager,* Jackson; *William Wallace Allred, John D. Kervin, Jr., John K. Keyes,* Collins, for appellees, Polk Financial Service and others.

*Moore & Jones,* Hattiesburg, for appellee, Gibbon Gas and Fuel Company, Inc.

*Hugh McIntosh,* Collins, for appellee, Commercial National Bank and Trust Company of Laurel, Mississippi.

Ethridge, J.

This suit originated in the Chancery Court of Covington County. The bill of complaint was filed in May 1958 by appellees, Polk Financial Service, and with various amendments sixteen other judgment creditors of the defendant-appellants. Its purpose was to set aside certain fraudulent conveyances of real property made by defendants and to subject the land involved in the deeds to judgment liens of complainants. The final decree of the chancery court, dated May 17, 1960, declined to cancel the deeds, but adjudicated that they were executed subject to the judgments and claims of complainants, imposed liens in their behalf upon the property, and directed it to be sold to satisfy those liens, subject to two deeds of trust and the homestead exemption of W. P. Davis and wife. This appeal is from that decree.

The issues are concerned with the propriety of the trial court's refusal to set aside certain decrees pro confesso; and the enforcement of liens against property of a bankrupt, where a creditors' bill was filed more than four months before the petition in bankruptcy, and commencement of the suit created a statutory lien on the property.

In 1951 Lonnie McDonald and wife conveyed the property to W. P. Davis. In January 1953 defendants W. P. Davis and wife, Louella Speed Davis, executed a deed

of trust to Lamar Life Insurance Company in the amount of $13,500. Proceeds of this loan apparently were used to erect on the property a funeral home, in which W. P. Davis and wife lived, a cafe and a filling station. In 1954 Davis organized a corporation called Davis, Inc. He and his wife then conveyed this property to Davis, Inc., of which Davis was the president, and in which he, his wife, and Mrs. Alice Pickering owned all of the stock. On June 18, 1956, Davis, Inc., by W. P. Davis, president, conveyed the property to his wife.

The seventeen judgment creditors obtained their judgments, which were enrolled, during the several years of 1953-1958, and three in 1960. Eight of these judgments were against W. P. Davis only; five of them were against Davis and his wife; three against Davis and the Davis Funeral Home, Inc.; two against Davis, Mrs. Davis and Davis, Inc.; one against Mrs. Davis and Davis, Inc. There were numerous amendments to the bills and answers. The chancellor was warranted in finding, as he apparently did, that most of the delay was attributable to W. P. Davis. The case came on for trial on May 9, 1960.

The first assignment of error by appellants pertains to the decrees pro confesso in favor of three of the complainants, Triangle Refineries, Inc., National Surety Company, and Gibbons Gas & Fuel Company. Their bills of complaint had been on file for some time. No answers to the bills were filed until the morning the case was finally set for hearing. Motions for decrees pro confesso were made before filing of answers, and at a time when they were several months late. At that time defendants made motions to set aside these decrees pro confesso, and to permit answers to be filed.

After a hearing, the chancellor overruled them, holding that they should not be used to impede the progress of the trial; that the court had had considerable difficulty in finally getting the case to trial, largely the

fault of defendants. The court noted that, at the time it ruled on the decrees pro confesso, there was on file with the clerk answers of defendants to the bill, but they were filed subsequent to the motions for decrees pro confesso, and the court was not aware of such answers being filed, since that fact was not brought to its attention by defendants. However, the court said that defendants had had a full trial and their day in court. Because of their delay in getting the case to trial and their dilatoriness, the court overruled the motions to set aside the decrees pro confesso.

Code Sec. 1229 provides that the chancellor has power for good cause shown to grant an extension of time for the filing of an answer, but "no such enlargement of time should be granted where the request therefor is solely for delay or is the result of inexcusable neglect on the part of the defendant or his solicitor."

Griffith, Miss. Chancery Practice (1950), Sec. 267, states that under this statute a decree pro confesso should not be set aside where the application is solely for delay or is the result of inexcusable neglect by defendant. When the application is resisted by complainant, the setting aside of a decree pro confesso "is not a mere matter of discretion or grace, but the good cause must be actually and satisfactorily shown . . ." Ibid., Sec. 268.

 █ We do not think there was any error in overruling defendants' motion to set aside the decrees pro confesso. The chancellor was amply warranted on this record in concluding that the delay of defendants in filing answers to the bills of these three complainants was the result of defendants' inexcusable neglect and delay. This was a proper exercise of the sound discretion of the trial court.

The next question pertains to the imposition of the judgment liens upon this property. Miss. Code 1942, Sec. 1555, provides: "A judgment so enrolled shall be

a lien upon and bind all the property of the defendant within the county where so enrolled, from the rendition thereof, and shall have priority according to the order of such enrollment, in favor of the judgment creditor, his representatives or assigns, against the judgment debtor, and all persons claiming the property under him after the rendition of the judgment; and a judgment shall not be a lien on any property of the defendant thereto unless the same be enrolled . . ."

Appellants assert that the trial court erroneously imposed liens in favor of the judgment creditors on this property. In order to ascertain what the court had the power to do on this record, it is first necessary to ascertain what it actually did in the final decree. The decree stated that the conveyances from Davis to Davis, Inc., and from Davis, Inc., to Mrs. Davis, should not be set aside, but that each of the deeds were executed subject to the judgments and claims of the complainants, and that they were entitled to liens against the property, which was ordered to be sold. Complainants' liens were subject to two prior deeds of trust and to the homestead rights of Mr. and Mrs. Davis. Hence the decree adjudicated liens against the real property in favor of complainants and itemized the priority of complainants' seventeen judgment liens.

An enrolled judgment is a lien upon a defendant's property. Code Sec. 1555. The decree imposed liens on appellants' land. However, appellants say that Davis' discharge in bankruptcy relieved him and the property from those burdens. We do not agree.

On May 9, 1960, when the trial of this case finally began, W. P. Davis filed a motion to dismiss the bills of complaint against him as an individual on the ground of a discharge in bankruptcy, dated May 4, 1960. The motion to dismiss recited that all of the complainants had been summoned in the bankruptcy proceeding, and all of their judgments were recited by the defendant

in his bankruptcy schedule, but only one appeared and objected to the discharge.

■■ ■ The chancery court correctly overruled this motion to dismiss. The final decree did not expressly rule that the conveyances to Davis, Inc., and to Mrs. Davis were fraudulent, but that is the necessary implication from the decision of the court that the judgment liens followed the property through the hands of these transferees. Moreover, the overwhelming weight of the evidence supports that conclusion.

Code Sec. 1327 authorizes judgment creditors and creditors who have not yet obtained judgments to file suits in chancery court to set aside fraudulent conveyances of property, made for the purpose of hindering, delaying, or defrauding creditors. It provides that such persons may subject the property to the satisfaction of their demands, and further states: ''The creditor in such case *shall have a lien* upon the property described therein *from the filing of his bill . . .*'' (Emphasis added.)

■■■ The original bill and amendments adding other complainants, in this suit brought under Sec. 1327, were filed before Davis' petition for and discharge in bankruptcy. Hence under the statute these judgment creditors and creditors without judgment had a lien on the property ''from the date of the filing'' of their bill. Sec. 1327.

6 Am. Jur., Bankruptcy, Sec. 771, describes the requirements for a special judgment in the enforcement of a lien: ''An early decision of the Supreme Court has furnished authoritative recognition and precedent for the rendition, in favor of a lien creditor and against a bankrupt who has been discharged, of a judgment in a form which will permit security to be availed of but not impose a personal liability. Thus the lien of an attachment which is preserved notwithstanding the discharge of the defendant in bankruptcy may be enforced through

a modified form of judgment as against property on which the lien exists. . . .

"There has been little judicial discussion as to the form of the procedure to be followed in taking a special judgment. Judgment for the plaintiff, with the direction that it be enforced only against the property subject to the lien, would seem to be the proper procedure, though the language of some opinions is to the effect that judgment is to be taken against the property itself. . . ."

■■■ The design of the Congress in the Bankruptcy Act was to protect all liens, whether arising by contract or by statute, as under Secs. 1327 and 1555. Hence a trustee in bankruptcy takes subject to judgment, execution, and attachment liens which are valid under state law and not invalidated or subordinated by the Bankruptcy Act. The holder of a valid lien on property of one adjudicated in bankruptcy may assert it against the property to the same extent as if the bankruptcy had not intervened, provided the attachment or suit was begun more than four months prior to the filing of the petition. 6 Am. Jur., Bankruptcy, Sec. 949. In the instant case, the creditors · have a lien on the property from the filing of the bill. Sec. 1327. Davis' discharge in bankruptcy does not affect the rights of appellees to assert their liens.

■■■ When a creditor files a suit to set aside a transfer in fraud of creditors, or an equivalent proceeding to impose a lien on the property, under Sec. 1327, the statutory equitable lien of the creditor dates from the commencement of his suit. Where the suit is begun more than four months before the bankruptcy proceeding, the latter does not vacate or avoid the lien thus secured, although judgment in the creditor's suit, as here, may have been actually rendered within the four-month period or after such adjudication. The filing of the suit creates a lien upon the property. A creditor may continue the prosecution of the suit notwithstanding the

subsequent bankruptcy of the debtor. Anno., Right of Creditor to Set Aside Fraudulent Transfer as Affected by Bankruptcy of Debtor, 158 A. L. R. 1274, 1295 (1945); 6 Am. Jur., Bankruptcy, Sec. 1170; 8 C. J. S., Bankruptcy, Secs. 261, 266. This case falls within those principles. Therefore, the bankruptcy of Davis did not preclude the decree enforcing the liens against the property fraudulently transferred.

Affirmed.

*Lee, P. J.,* and *Arrington, McElroy* and *Rodgers, JJ.,* concur.